***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs before the Full Commission. Both parties waived oral argument. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's decision in part and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between the named employee and named employer.
6. A set of medical records was marked as stipulated exhibit 1 and received into evidence.
7. A set of wage records was marked as stipulated exhibit 2 and received into evidence.
8. Subsequent to the hearing, a set of medical records was marked as stipulated exhibit 3 and received into evidence.
9. Subsequent to the hearing, a set of medical records was marked as stipulated exhibit 4 and received into evidence.
 ***********
Based upon all of the competent, credible evidence in the record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 56 years old and had completed the twelfth grade of high school and two years at Pembroke State University studying various sociology/criminology type courses. Plaintiff's prior work experience was in sewing, substitute teaching, bus driving, and room attendant and clerk at a local gas/grocery store. Plaintiff first became employed with Cozy Corner Restaurant around 1995 as a waitress.
2. As of July 7, 2000, plaintiff worked 10:30 to 1:30 Tuesday through Friday with occasional work on Saturdays. Plaintiff was paid $5.00 per hour in cash and often received tips of $5.00 to $7.00 per day, not reported on her tax return. Her average weekly wage was for an average of 13.5 hours was $148.50, yielding a compensation rate of $99.00 per week.
3. On July 5, 2000 plaintiff was involved in a motor vehicle accident when her vehicle was sideswiped by another vehicle while traveling on Rural Paved Road 710 in Robeson County, North Carolina. As a result of the motor vehicle accident plaintiff described her knees as striking each other resulting in injury to her knees for which she received treatment at Southeastern Regional Medical Center. The medical records there indicate that plaintiff complained of bilateral knee pain and denied any other complaint. At the bottom of the medical record a notation was made by the nurse on duty that plaintiff received an ice pack to her right ankle; however, this notation was stricken through and a further notation was made that the notation had been entered onto the wrong chart.
4. On July 7, 2000 plaintiff was waitressing at the Cozy Corner when she attempted to maneuver between two tables to take the order of customers sitting at a third table. As she moved between the two tables plaintiff stood on her tip toes and struck her right foot on the leg of one of the chairs of the tables. Plaintiff felt sharp pain in her right foot and reported the incident immediately to the owner's son, Dwayne Cummings. Plaintiff's injury was an injury by accident within the course and scope of her employment and is compensable under the Workers Compensation Act.
5. Plaintiff continued to work the remainder of her shift but complained to several co-workers that she felt like she had broken her foot while trying to maneuver between the two tables. At the end of her shift she proceeded to Pembroke Family Practice Center for treatment of her right foot, giving a history of working at a local restaurant waiting tables when she accidentally caught that foot under a chair and twisted it.
6. Plaintiff was provided an ace wrap and pain medication and was sent to be x-rayed. She was then told to follow up with an orthopedic surgeon.
7. On July 13, 2000 plaintiff was seen by Dr. Staley T. Jackson of the Southeastern Orthopaedic Clinic. Plaintiff provided a history of twisting her right foot on July 7, 2000. Plaintiff's complaints at that time were pain on the outside of her foot and x-rays revealed a fracture of the right fifth metatarsal with slight displacement. Dr. Jackson applied a walking cast to plaintiff's foot/ankle. Plaintiff treated with Dr. Jackson from July 13, 2000 through July 2, 2001. During the course of plaintiff's treatment plaintiff was treated with pain medication, arch supports and other conservative measures.
8. Following her compensable injury of July 7, 2000 plaintiff contacted Cozy Corner and told them that she would be unable to work because of her compensable injury. Cozy Corner told her that they would have to fill her position. As of the date of the hearing before the Deputy Commissioner, plaintiff had remained unemployed since July 7, 2000.
9. Due to pain in the metatarsal area and ankle and inability to regain her range of motion, plaintiff did not reach maximum medical improvement and regain the ability to return to work until January 3, 2001. As a result of her compensable injury she sustained a 5% permanent partial impairment of the right foot.
10. The Full Commission finds plaintiff to be credible. The fact that her knees were injured in an automobile accident two days prior to her injury at Cozy Corner does not mean that her foot and ankle were not injured in the table incident. Neither does the fact that she was seen limping prior to the table incident, for she had hurt her knees two days earlier. The customer who said the injury was to plaintiff's left foot was mistaken; all of the corroborative medical evidence shows a right foot injury on July 7, 2000, not a left foot injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the greater weight of the evidence that she sustained an injury by accident arising out of and in the course of his employment with defendant on July 7, 2000. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total compensation at the rate of $99.00 per week from July 7, 2000 through January 3, 2001, the period when she was unable to work because of her compensable injuries. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to permanent partial compensation at the rate of $99.00 per week for 7.5 weeks for the 5% rating to her right foot. N.C. Gen. Stat. § 97-31 (14).
4. With respect to her compensable injuries, plaintiff is entitled to medical treatments reasonably required to "effect a cure or give relief." Defendants shall pay medical providers for such treatment or, where appropriate, reimburse those who paid. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereafter described, defendants shall pay to plaintiff $2,574.00 for the 26 weeks of compensation due for loss of wages from July 7, 2000 through January 3, 2001, and $742.50 for the 5% permanent partial impairment of her right foot. Of the total of these amounts $2,487.38 shall be paid to plaintiff and $829.12 shall be paid directly to plaintiff's attorney. Defendants shall pay to plaintiff interest at the rate of 8% per year on the $3,316.50 otherwise due plaintiff from September 17, 2001 (the date of the hearing before the Deputy Commissioner) until the entire $3,316.50 is paid. If paid by August 19, 2002, such interest would be $244.91.
2. Defendants shall pay, or reimburse those who paid, all medical providers for service rendered to plaintiff by reason of her compensable injuries to the extent those services tended to provide relief, to effect a cure or to help to return her to gainful employment.
3. Defendant shall pay the costs.
This 8th day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION
 S/_______________ DIANNE C. SELLERS COMMISSIONER